UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALLISON FORREST, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 06-73-P-C |
| | ) | |
| BRINKER INTERNATIONAL PAYROLL CO., LP, d/b/a/ CHILI'S GRILL & BAR, | ) ) ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, Brinker International Payroll Company, LP, doing business as Chili's Grill & Bar, moves for summary judgment on all counts asserted against in by the plaintiff in this employment discrimination action. I recommend that the court grant the motion.

### I.  Summary Judgment Standard

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

1

party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni*, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id.*  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See*

2

*id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted).

## II. Factual Background

The statements of material facts submitted by the parties in accordance with Local Rule 56 include the following undisputed facts.

The plaintiff was employed by the defendant in July 2003 to work as a server in its restaurant in South Portland, Maine. Defendants' [sic] Statement of Material Facts in Support of Motion for Summary Judgment ("Defendant's SMF") (Docket No. 12) ¶¶ 1-2; Plaintiff's Response to Defendant's

Sep[a]rate Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 14) ¶¶ 1-2. She became a bartender in July 2004 and worked in that position until she resigned in May 2005. *Id*. ¶ 3. At the time the plaintiff was hired, Michael Vashaw was already employed by the defendant as a line cook at the restaurant. *Id*. ¶ 4. Vashaw did not supervise the plaintiff. *Id*. ¶ 5.

Vashaw and the plaintiff started to date in October 2003 and dated on and off for about a year. *Id*. ¶¶ 6-7. They broke up and got back together several times during that year. *Id*. ¶ 8. The plaintiff discussed her personal relationship with Vashaw with her co-workers. *Id*. ¶ 13. In October 2004 the plaintiff and Vashaw had an argument about $100-$150 that Vashaw owed the plaintiff. *Id.* ¶ 15. According to the plaintiff, this argument led to four other female employees threatening her in the parking lot of the restaurant. *Id.* ¶ 16. She reported the incident to Charles Melino, then the general manager of the restaurant, the following day. *Id.* ¶ 17. She did not experience a similar incident following that report. *Id.* ¶ 19.

The plaintiff and Vashaw continued to dine together or have drinks together occasionally after October 2004 and engaged in intimate relations as late as January 2005. *Id.* ¶¶ 20-21. The plaintiff started dating Jeremy Gregor, a customer of the restaurant, in March 2005. *Id.* ¶ 22. Her decision to end her relationship with Vashaw and to start dating Gregor upset Vashaw. *Id.* ¶ 23. Vashaw questioned the plaintiff a lot. *Id.* ¶ 24. Soon after she began dating Gregor, the plaintiff reported to Claude Hadjaissa, then the general manager of the restaurant, that Vashaw was trying to find out what was going on between her and Gregor, calling her names and saying that she was a whore and not giving her things that she needed in the kitchen. *Id.* ¶¶ 27, 30. She acknowledges that Vashaw engaged in this conduct because she had broken up with him and started dating someone else. *Id.* ¶ 29.

Hadjaissa told the plaintiff that he would speak with Vashaw about the problem. *Id.* ¶ 31. He gave Vashaw an oral warning. *Id.* ¶ 33.[1] Hadjaissa reported to the plaintiff that he had taken action and followed up with her on a couple of occasions to make sure that everything was going all right. *Id.* ¶ 35.

At the end of March 2005 the plaintiff reported to Craig Twombly that she was upset with Vashaw's handling of her food orders, that Vashaw was calling her names and that he was talking to other employees about her. *Id.* ¶ 36. Twombly served as the kitchen manager at the restaurant from October or November 2004 until he became general manager in December 2005, when Hadjaissa left that position. *Id.* ¶ 37. Twombly discussed the situation with Hadjaissa and disciplined Vashaw by issuing a final written warning directing Vashaw to "stop all negative confrontations with other employees," instructing him that he must correct the problem "immediate[ly;] there will be no other warnings on this matter," and informing him that failure to comply would result in "immediate termination." *Id.* ¶¶ 38, 41. Hadjaissa and Twombly reported to the plaintiff that Vashaw had been given a written warning. *Id.* ¶ 42. They told the plaintiff that she should let them know if Vashaw engaged in the conduct again. Id. ¶ 43. It was clear to the plaintiff that they wanted the conduct to stop. *Id*.

In the morning of April 13, 2005 the plaintiff complained about Vashaw's conduct the previous evening. *Id.* ¶ 46. She reported to Hadjaissa that Vashaw had squirted her with hot water while she was making a personal phone call, had acted rudely toward her the rest of the evening, had followed her into a walk-in cooler and had called her a whore, told her she was fat and needed to go to the gym

---

[1] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, without citation to the summary judgment record, asserting only that "[t]he evidence does not support the assertion." Plaintiff's Responsive SMF ¶ 32. However, the transcript of the deposition of Hadjaissa, cited by the defendant in support of this paragraph of its statement of material facts, does support the statement that Vashaw was given an oral warning. Hadjaissa testified: "I took [Vashaw] in the office, and him and I talked. And I said, there is a complaint about you, you been rude to Allison, and I would like it to stop, and behave as a professional. If this matter (*continued on next page*)

5

and called her a couple of other names. *Id.* ¶ 47. Hadjaissa questioned Vashaw when he came to work. *Id.* ¶ 48. Vashaw denied calling the plaintiff a whore but admitted that he told her she was fat and should go to the gym. *Id.* Hadjaissa terminated Vashaw's employment at that time. *Id.* ¶ 49.

After Vashaw's employment was terminated, the plaintiff obtained a temporary restraining order against him. *Id.* ¶ 51. Thereafter Hadjaissa asked the plaintiff to let him know if any other employees made comments to her about the Vashaw incident. *Id.* ¶ 53. This comment made the plaintiff uncomfortable and she asked Twombly to set up a meeting with Jonathan Witham, the area director for Chili's who oversaw several restaurants including the one in South Portland, to discuss the manner in which the situation was handled. *Id.* ¶¶ 54-55. Witham came to the South Portland restaurant to meet with the plaintiff. *Id.* ¶ 56. The plaintiff told Witham about the temporary restraining order and Hadjaissa's belief that he simply needed to keep Vashaw out of the area of the restaurant where the plaintiff worked. Plaintiff's Separate Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's SMF") (Docket No. 15) ¶ 41; Defendant's Reply Statement of Material Facts, etc. ("Defendant's Responsive SMF") (Docket No. 18) ¶ 41.

A week later the court granted the plaintiff a permanent restraining order. *Id.* ¶ 42. The plaintiff brought the order to Twombly and other managers. *Id.* ¶ 43. Witham told the plaintiff that they were going to allow Vashaw on the premises if the plaintiff was not in the building. *Id.* ¶ 45. Within an hour the plaintiff told Jessica Legere, a manager, that she was uncomfortable with Vashaw knowing her schedule. *Id.* ¶ 46. Legere responded that there was nothing the defendant could do about it. *Id.* In a meeting on May 14, 2005 Witham told the plaintiff that she needed to accept ownership for things and she had betrayed the agreement the two of them had. *Id.* ¶¶ 47-48.

---

continue, I will — you know, circumstances will take place." Deposition Transcript of Claude Hadjaissa (Attachment 2 to Docket No. 12) at 12.

The defendant decided that Vashaw would not be permitted on the restaurant premises at any time while the plaintiff was working. Defendant's SMF ¶ 59; Plaintiff's Responsive SMF ¶ 59. The plaintiff is not aware of any time that the defendant permitted Vashaw to be at the restaurant between the time the temporary order was issued and the date of her resignation. *Id.* ¶ 60. Vashaw never entered the building again. *Id.* ¶ 61.[2] The plaintiff resigned from employment with the defendant on May 14, 2005, one month after the defendant had terminated Vashaw's employment, *id.* ¶ 62, and one hour after her conversation with Witham, Plaintiff's SMF ¶ 49; Defendant's Responsive SMF ¶ 49.

The plaintiff specifically told Hadjaissa at least once that she did not want him to fire Vashaw. Defendant's SMF ¶ 67; Plaintiff's Responsive SMF ¶ 67.

The defendant has adopted and implemented policies providing equal employment opportunities and prohibiting sex harassment, and it provided copies of those policies to the plaintiff when she was first employed. *Id.* ¶ 65. The defendant has an anti-sex-harassment policy and trained its managers on sexual harassment, including investigation of complaints and discipline up to and including termination. *Id.* ¶ 66. The policy prohibits making threats due to a negative response to sexual advances, verbal abuse of a sexual nature or blocking one's movements. Plaintiff's SMF ¶ 54; Defendant's Responsive SMF ¶ 54. It states that the defendant will begin an objective, thorough investigation immediately upon receiving a complaint of harassment. *Id.* ¶ 55.

### III. Discussion

The complaint alleges violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, through the existence of a hostile work environment (Count I) and of the Maine Human Rights Act by the same actions (Count II). The defendant notes, correctly, that the same legal analysis applies to both claims.

---

[2] The plaintiff's response to this paragraph of the defendant's statement of material facts is "Plaintiff did not admit or deny." Plaintiff's Responsive SMF ¶ 61. This is not an acceptable response under Local Rule 56. Because the paragraph is supported by the citation given to the summary judgment record, it is deemed admitted.

Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 11) at 5 n.1. *Paquin v. MBNA Mktg. Sys., Inc.*, 233 F.Supp.2d 58, 64 (D. Me. 2002). The plaintiff makes no reference to her state-law claim in her memorandum of law. Plaintiff's Memorandum in Support of Her Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 16). I will consider both claims concurrently.[3]

> To prove a claim of hostile work environment sexual harassment, a plaintiff must establish:
>
> > (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001). Here, the defendant contends that the plaintiff cannot establish the third element because any harassment by Vashaw was based on personal animosity resulting from the souring of their romantic relationship rather than on the plaintiff's gender. Motion at 6.

In *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343 (11th Cir. 2000), a male school teacher was harassed by a fellow teacher with whom he had had a consensual sexual relationship, *id.* at 1344. He alleged that the school administration allowed a hostile work environment to exist; the Eleventh Circuit upheld the trial court's finding that the harassment suffered by the plaintiff was not the result of his gender but rather the result of the female teacher's contempt for him following their failed relationship and thus not cognizable as sexual discrimination. *Id.* at 1344-45. The defendant asserts that these facts are indistinguishable from those presented by the instant case. Motion at 7-8.

---

[3] When a party fails to respond to all or part of a motion for summary judgment, the court must still "inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Cordero-Soto v. Island Fin.,* (*continued on next page*)

8

The plaintiff first responds that the defendant "did not raise the defense that the harassment by Vashaw was not based upon sex" in its answer to the complaint and that this "defense" should therefore be stricken, citing Fed. R. Civ. P. 8(c). Opposition at 7. Understandably, she cites no other authority for this novel argument. The contention that a plaintiff cannot prove one or more elements of her claim is not a "matter constituting an avoidance or affirmative defense," in the words of Rule 8(c),[4] and thus the rule is not applicable here. The logical outcome of the plaintiff's argument would be to make all arguments in opposition to a plaintiff's claim into affirmative defenses. Merely to state the theory is to demonstrate its invalidity.

The plaintiff next attempts to distinguish *Succar* by asserting that, in her case, "the sexual harassment started only after Forrest began to date Gregor," not when Vashaw and the plaintiff broke off their relationship.[5] Opposition at 7. This fact, she contends, would allow a jury to conclude that Vashaw "began to sexually harass Forrest, not because of personal animosity, but because she would no longer go out with him and had chosen another." *Id.* at 7-8. It is hard to imagine a more direct example of personal animosity than harassment undertaken because the object of the harassment "would no longer go out with" the harasser. Gender is merely coincidental in that situation; Vashaw's motivation in his conduct toward the plaintiff was not that the plaintiff is female but because he felt jilted by her.

The plaintiff relies on *Green v. Administrators of Tulane Educ. Funds*, 284 F.3d 642 (5th Cir. 2002). Opposition at 8. In that case, the Fifth Circuit upheld a trial court's finding that harassment that

---

*Inc.*, 418 F.3d 114, 118 (1st Cir. 2005).

[4] "Generally speaking, the rule's reference to 'an avoidance or affirmative defense' encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1271 at 585 (3d ed. 2004). A contention that the plaintiff cannot prove one of the elements of her *prima facie* case fits neither of these categories.

[5] This argument is undercut by the plaintiff's reliance in her factual submissions on an allegation that Vashaw sent four women to threaten the plaintiff well before she started to date Gregor. Plaintiff's SMF ¶¶ 2-7, 9.

9

began only after a voluntary romantic relationship between the plaintiff and her supervisor ended and undertaken because the plaintiff refused to continue to have a casual sexual relationship with him was sexual harassment for purposes of a hostile environment claim. 284 F.3d at 657. The plaintiff also relies on *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183 (11th Cir. 2001). Opposition at 9-10. However, *Lipphardt*, an Eleventh Circuit case that was decided shortly after the Eleventh Circuit decided *Succar*, is completely consistent with Succar. As the court pointed out, *Lipphardt* involved a retaliation claim rather than a hostile environment claim, and the applicable legal standard is significantly different. 267 F.3d at 1188. "On a claim for retaliation, the standard is not whether there is a valid hostile work environment claim, but whether Lipphardt had a good-faith reasonable belief that she was the victim of such harassment." *Id.* The court concluded that the jury could have found that she did, noting the following:

> The fact that Knuth and Lipphardt had a prior intimate relationship does not give Knuth a free pass to harass Lipphardt at work. While we recognize that "[p]ersonal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII," *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986), there is a point where inappropriate behavior crosses the line into Title VII harassment. In this case, the jury decided that Lipphardt could reasonably believe that Knuth had crossed that line, and it is not within the province of the courts to remove that decision from the jury.

*Id.* at 1188-89. Lipphardt does not support the plaintiff's position.

*Green*, which does support the plaintiff's argument, takes a minority position on the question at issue. *See, e.g., Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925-26 (8th Cir. 1999); *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997); *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986); *Huebschen v. Department of Health & Soc. Servs.*, 716 F.2d 1167, 1172 (7th Cir. 1983); *Kahn v. Objective Solutions, Int'l*, 86 F.Supp.2d 377, 381-82 (S.D.N.Y. 2000). Judge Woodcock of this court discussed this case law at length in *Oakstone v. Postmaster Gen.*, 332 F.Supp.2d 261, 269-72 (D. Me. 2004).

He concluded that retribution after a failed romantic relationship may cross the line into Title VII harassment when the means for revenge is gender-based. *Id.* at 271. In this case, while the language Vashaw is alleged to have directed toward the plaintiff was certainly gender-specific, Plaintiff's SMF ¶¶ 12-13, 21, 23, 29, 31, 33, 35, she does not proffer evidence of sexual advances by Vashaw, physical touching of a sexual nature or the type of activities found by the Lipphardt court to have the potential to cross the line into Title VII harassment (making erotic comments or advances, "brush[ing] up against [the plaintiff] in an inappropriate way while at work" on several occasions), 267 F.3d at 1189.

Even if the plaintiff had offered evidence that would allow a reasonable factfinder to conclude that Vashaw's actions as set forth in the summary judgment record were based on her sex, the motion for summary judgment should be granted on the basis of another argument advanced by the defendant. It asserts that the evidence is inadequate to support a conclusion that it is liable for Vashaw's alleged conduct. Motion at 8-11. Vashaw was not the plaintiff's supervisor; he was a co-worker.

> A plaintiff must satisfy different standards for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor or co-employee of the victim. . . . To establish employer liability for a non-supervisory co-employee, a plaintiff must demonstrate that the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action.

*Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002) (citation and internal quotation marks omitted). The defendant asserts that "[t]he record does not contain evidence that would permit a reasonable factfinder to conclude that Forrest satisfies either prong," Motion at 8, but a reasonable jury could find that the defendant was aware of what the plaintiff claimed was sexual harassment by Vashaw. It is on the second prong of the standard that the plaintiff's case founders.

It is undisputed that the defendant adopted and implemented a policy prohibiting sex harassment. Defendant's SMF ¶ 65; Plaintiff's Responsive SMF ¶ 65. Similarly, it is undisputed that

the defendant trained its managers to investigate complaints of sexual harassment and to impose discipline up to and including termination. *Id.* ¶ 66. The plaintiff contends that "[t]here is no evidence that Chili's took any action whatsoever to respond to [her] complaint" in October 2004 that Vashaw sent four women to Chili's to threaten and terrorize her over his debt to her. Opposition at 10. However, the plaintiff offers no evidence that the defendant "took [no] action whatsoever" in response to this complaint, Plaintiffs' SMF ¶¶ 2-7, and the record evidence is to the contrary. The plaintiff purports to deny paragraph 18 of the defendant's statement of material facts, which states that the then-manager "spoke with the people involved 'to make sure that [Forrest] felt comfortable while [she] was at work.'" Defendant's SMF ¶ 18. The plaintiff's response, in relevant part, states: "Denied. The cited evidence states that Mr. Melino said he would talk to people at work, but Forrest testified that she did not know if he ever did speak to Vashaw." Plaintiff's Responsive SMF ¶ 18. The cited evidence is the plaintiff's deposition, at which she testified that Melino "told [her] he was going to take care of the situation" and that "[a]s far as [she knew] he did speak to the three girls" "to make sure that [she] felt comfortable while [she] was at work." Deposition Transcript of Allison Forrest, Attachment 1 to Docket No. 12, at 41. Thus, the evidence is that the manager did take action in response to this complaint, and, in any event, the complaint cannot reasonably be characterized as one involving sexual harassment.

With respect to the other complaints about Vashaw brought to the defendant's attention by the plaintiff, the evidence is that in each instance the defendant took appropriate action. After the complaint in March 2005, Hadjaissa gave Vashaw an oral warning. The plaintiff contends that "there is no evidence that Chili's took any corrective action against Vashaw" after either of two complaints she made that day, Opposition at 11, but that is incorrect. I have already discussed the evidence that Hadjaissa gave Vashaw an oral warning. There is also evidence that Hadjaissa investigated this

12

complaint. Defendant's SMF ¶ 32. The plaintiff purports to deny this paragraph of the defendant's statement of material facts, not because the cited evidence does not support it, but because the cited evidence is supposedly inconsistent with the answer given by the defendant to the plaintiff's interrogatory number 7. Plaintiff's Responsive SMF ¶ 32. The relevant portion of the interrogatory answers is the following:

> 6. Prior to the filing of this lawsuit, did Defendant conduct an[] investigation into Plaintiff[']s allegation of misconduct by Mr. Vashaw?
>
> RESPONSE: Yes.
>
> 7. If the answer to the preceding interrogatory is yes, identify the name, address, phone number, job title of each person defendant interviewed as part of its investigation.
>
> RESPONSE: Brinker [*i.e.*, the defendant] interviewed Ms. Forrest and Mr. Vashaw. No further interviews were deemed necessary in light of the fact that Brinker found Ms. Forrest's complaints to be sufficiently credible to warrant action regardless of whether or not the conduct amounted to unlawful harassment. Mr. Vashaw's admission that he used offensive language was sufficient to justify termination of his employment without the need for additional interviews in light of the discipline previously administered. . . .
> Facts related to Ms. Forrest's complaint are set forth more fully in the position statement and supporting documentation that Brinker provided as part of the administrative process before the Maine Human Rights Commission. The answer to this interrogatory may be derived from that statement.

Defendants' [sic] Responses to Plaintiff's First Set of Interrogatories (Attachment 5 to Docket No. 14) at 9-10. When the entire response to the seventh interrogatory is read, it is clear that the defendant is responding to the question posed in the singular in the sixth interrogatory by referring to the plaintiff's final complaint about Vashaw, following which he was terminated. It is equally clear from the document incorporated into the response by reference that Hadjaissa both gave Vashaw a verbal warning and "spoke with several employees to see if they had heard anything and he was told that they witnessed that Mr. Vashaw had been rude to Ms. Forrest" at the time of the March 2005 complaint or

13

complaints. Letter dated September 30, 2005 from Susan J. Sandidge to Patricia E. Ryan (attached to Affidavit of Louis B. Butterfield (Attachment 1 to Docket No. 18)) at 2.

After the plaintiff's next complaint, to Twombly, he investigated by speaking with Vashaw and other employees and discussed the situation with Hadjaissa. Defendant's SMF ¶¶ 36, 38-40. The plaintiff purports to deny that Twombly spoke with employees other than Vashaw and herself, on the same basis as her purported denial of paragraph 32. Plaintiff's Responsive SMF ¶¶ 38, 40. A review of the interrogatory responses and the incorporated document reveals that there is no evidence to support a denial of Twombly's deposition testimony that he did in fact speak to other employees about this complaint. Deposition Transcript of Craig Twombly (Attachment 4 to Docket No. 12) at 25, 33. More important, there is no dispute that this complaint resulted in the issuance of a final written warning to Vashaw. Defendant's SMF ¶ 41; Plaintiff's Responsive SMF ¶ 41.

The defendant terminated Vashaw after the plaintiff's next complaint, on April 13, 2005. *Id*. ¶¶ 45-49. The plaintiff contends that she repeatedly told Hadjaissa on other occasions that Vashaw's conduct "was not improving" and that "there is no evidence that Hadjaissa took any action in response to this notice," Opposition at 11 (¶¶ 4, 7), but she cites no record evidence in support of these assertions. The section of her opposition entitled "The Sexual Harassment Continues" includes a citation to paragraph 22 of her statement of material facts and the section entitled "Vachaw's [sic] Harassment Continues After the Write-Up" includes a citation to paragraph 33 of her statement of material facts. Opposition at 3, 4. Assuming that this is the record evidence to which she means to refer, paragraph 22 asserts that Hadjaissa checked in with the plaintiff "a couple of times" and that on both occasions she told him "that the situation with Vashaw had not improved." Plaintiff's SMF ¶ 22. Paragraph 33 states that "[a]fter the written warning, Vashaw continued to call Forrest names such as whore, bitch[,] slut and cunt." Plaintiff's SMF ¶ 33. The defendant objects to paragraph 33 on the

14

ground that the record citation does not support the assertion that these words were used. Defendant's Responsive SMF ¶ 33. The cited evidence, paragraph 6 of the plaintiff's affidavit, Plaintiff's SMF ¶ 33, in fact says only that "after the [written] warning and until Mr. Vashaw was terminated, he continued to call me names and continue with the harassment." Affidavit of Allison Forrest (Attachment 1 to Docket No. 14) ¶ 6. This conclusory statement, devoid of reference to any specific instances or names, is insufficient to allow a reasonable factfinder to conclude that specific incidents of harassment requiring a response by the employer occurred, or, more important, that they were brought to the employer's attention. To the extent that paragraph 22 of the plaintiff's statement of material facts, construed as favorably as required in connection with a motion for summary judgment, might allow a reasonable factfinder to conclude that the defendant was informed twice between March 27, 2005 and April 13, 2005 — a period of 17 days, during which the plaintiff and Vashaw only worked together on Sundays and possibly one other day a week, Defendant's Responsive SMF ¶ 21 — that Vashaw's behavior "was not improving," that fact is simply insufficient, as a matter of law, to allow a reasonable jury to conclude that the defendant did not take prompt and appropriate action.

Finally, the plaintiff contends that the defendant "refuse[d] to enforce" the permanent restraining order she obtained against Vashaw, Opposition at 5, 12, a copy of which she has not provided to the court. She asserts that the restraining order prohibited Vashaw "from being at the vicinity of Plaintiff's home, school or place of employment, except as allowed by the management of Chili's." *Id*. at 5. Witham told her that the defendant was going to allow Vashaw on the premises if Forrest was not in the building. Plaintiff's SMF ¶ 45; Defendant's Responsive SMF ¶ 45. Apparently, the plaintiff concluded that allowing Vashaw on the premises when she was not there would permit him to learn her work schedule. Opposition at 6. When the defendant apparently refused to bar Vashaw from its premises at all times, the plaintiff contends that she "was forced to

15

resign." *Id.* By her own factual submissions, the plaintiff has established that the defendant did not refuse to enforce the restraining order. In the absence of any evidence that harassment of the plaintiff by Vashaw over which the defendant could possibly have had any control continued or was likely to continue if Vashaw was allowed to visit Chili's when the plaintiff was not there — the only evidence is that the plaintiff in fact never visited the premises again, Defendant's SMF ¶ 61 — no reasonable factfinder could conclude that the defendant's refusal to bar Vashaw completely constituted a failure to take prompt and appropriate action. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 813 (7th Cir. 2001) (irrelevant that employer could have done more in absence of evidence suggesting that steps taken by employer not reasonably likely to prevent harassment from recurring).

An employer who implements a remedy for complaints of sexual harassment may be liable for sex discrimination in violation of Title VII only if that remedy "exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005) (citation omitted). The defendant's remedy in this case does not begin to approach this standard.

The defendant is entitled to summary judgment both because the evidence establishes that the harassment of which the plaintiff complains was not based on sex and because, even if sexual harassment did occur, the defendant implemented prompt and appropriate action in response. It therefore is not necessary to reach the defendant's remaining arguments that the harassment was neither sufficiently severe nor pervasive and that the harassment was neither subjectively nor objectively offensive. Motion at 12-14.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED**.

### ***NOTICE***

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 11th day of January, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge
